IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CHRISTOPHER E. JOHNSON,

    **Plaintiff,**

v.　　　　　　　　　　　　　　　　　　Case No. 3:11-cv-00382

VERIZON COMMUNICATIONS,

    **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Docket No. 4). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having considered all of the pleadings before the Court in the light most favorable to Plaintiff, the undersigned respectfully recommends that Defendant's Motion to Dismiss be granted and that this action be dismissed, with prejudice, and removed from the docket of the Court.

**I.**　　**Factual and Procedural Background**

*Pro se* plaintiff Christopher E. Johnson alleges that on April 23, 2009 he was wrongfully discharged from his position as a sales consultant for Verizon Communications ("Verizon" or "Defendant"). (Docket No. 1-1).[1] According to Plaintiff,

---

[1] For purposes of deciding this Motion to Dismiss, the facts are based upon the allegations contained in Plaintiff's Complaint. (Docket No. 1-1 at 4).

on the day prior to his discharge, the manager of a competing Verizon sales center surreptitiously monitored Plaintiff's telephone communications with customers and reported to management that there were irregularities between the monitored phone calls and the "QST" points that Plaintiff recorded.[2] Plaintiff's employment was terminated as a result of these alleged irregularities. Plaintiff explains that during the four or five hour period that his telephone conversations were monitored, he was working with customers who had called to check the status of their online orders. Upon reviewing the customers' records, Plaintiff noticed that some items on the orders were incorrect. Plaintiff reported the errors to his manager, who cancelled the orders, so that Plaintiff could correctly re-enter them in the system. Plaintiff maintains that this was normal protocol in his office for amending incorrect orders. However, Plaintiff contends that the competing manager subsequently accused Plaintiff of "stealing orders" from other sales consultants when he re-entered them. Plaintiff was terminated from his position for not maintaining sales integrity. Plaintiff argues that he was "singled out" because he was the top sales consultant in his district and the competing manager wanted to "take [him] out" so that the manager's center could "have a chance of beating [Plaintiff's center] in sales." Plaintiff adds that he was harassed by the competing manager "because no manager sits on a line for over 4 hours and never once calls the consultant's direct manager if they notice any major problems."

Plaintiff filed a *pro se* Complaint alleging the foregoing facts in the Circuit Court of Putnam County, West Virginia on April 22, 2011, seeking relief in the form of "full restitution of all back wages consisting of salary, commissions, bonuses, and awards in

---

[2] Plaintiff clarifies that QST is a general point tracker for consultant's to keep track of their daily progress, but is not used to calculate their commission, bonuses, or pay.

2

the amount of $ 203, 934.00," as well as "$1,000,000.00 for pain and suffering, medical bills, mental anguish, harassment, discrimination, and public humiliation." (Docket No. 1-1 at 4). On May 25, 2011, Defendant removed the action to federal court (Docket No. 1) and thereafter filed the instant Motion to Dismiss. By Order entered June 22, 2011, the Court advised Plaintiff, *inter alia*, that he had the right to file a response in opposition to Defendant's Motion to Dismiss on or before July 11, 2011; that failure to respond may result in a recommendation of dismissal to the presiding District Judge; and that he must be present for an initial scheduling/status conference on July 27, 2011. (Docket No. 6). The Order explicitly notified the parties that argument on the Motion to Dismiss would be entertained at the initial conference. Despite this Order, Plaintiff neither filed a response to Defendant's Motion to Dismiss, nor appeared at the scheduled status conference. (Docket No. 7). To date, Plaintiff has not responded to the Motion to Dismiss.

## II.    Standard of Review

A motion made pursuant to Rule 12(b)(6) tests the legal and factual sufficiency of a Complaint. *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009), citing *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007). The Supreme Court explained the "plausibility" standard in *Iqbal*, stating:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are

> "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Ashcroft v. Iqbal, supra* at 1949, quoting *Bell Atlantic Corp v. Twombly*, *supra* at 1955 (internal citations omitted). Determining whether a Complaint states a facially plausible claim for relief is a "context-specific task that requires the court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal, supra* at 1950, citing *Iqbal v. Hasty,* 490 F.3d 143, 157-158 (2nd Cir. 2007). For purposes of a Rule 12(b)(6) motion, the Complaint is construed in the light most favorable to the plaintiff.  In addition, because Plaintiff is acting *pro se* in this case, his pleadings are held to a less stringent standard than if they were prepared by a lawyer and are interpreted liberally. *See Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). While the Court is required to accept as true the factual allegations asserted in the Complaint, it is not required to accept the legitimacy of legal conclusions that are "couched as . . . factual allegation[s]."  *Ashcroft v. Iqbal, supra* at 1949, quoting *Bell Atlantic Corp v. Twombly*, *supra* at 1955. "[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255 (4th Cir. 2009), citing *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).  Further, the Court should decline to consider "unwarranted inferences, unreasonable conclusions, or arguments." *Wahi v. Charleston Area Med. Ctr., Inc.,* 562 F.3d 599, 615 n. 26 (4th Cir. 2009).  A Complaint should be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on its face.' "*Giarratano v. Johnson, supra* at 302 (4th Cir. 2008), quoting *Bell Atl. Corp. v. Twombly, supra* at 570 (2007).  Applying this standard of review, the undersigned analyzes Plaintiff's Complaint to determine its facial plausibility.

### III. Summary of Arguments

Plaintiff contends that he was wrongfully terminated from his employment with Verizon on the basis of accusations by a competing center's sales manager, whose goal was to eliminate competition within the sales region. (Docket No. 1-1 at 4). Simply stated, Plaintiff claims that he was made a victim of his own success.

In response, Defendant seeks an Order dismissing the Complaint, asserting that Plaintiff fails to allege facts that, even if proven, could support a claim for relief under any federal or state law. (Docket No. 5). Defendant argues that Plaintiff was an "at-will" employee, who could be dismissed at any time, with or without cause, as long as the reason for dismissal did not violate the law. (*Id.*). Defendant emphasizes that the stated motive for Plaintiff's termination—that being "jealousy" of his success—is not prohibited by any federal law, state law or recognized public policy.

### IV. Analysis

Having fully considered the pleadings before the Court, the undersigned finds that Plaintiff fails to state a claim for wrongful discharge that is plausible on its face. Accepting Plaintiff's allegations as true, the Complaint establishes only that Plaintiff was an at-will employee, who was dismissed for a reason that did not contravene federal or state law or a substantial public policy recognized by the State of West Virginia. Accordingly, a cause for wrongful discharge does not lie.

West Virginia law presumes that Plaintiff's employment was terminable at the will of his employer. *Suter v. Harsco Corp.,* 184 W.Va. 734, 403 S.E.2d 751, 754 (1991). The presumption of at-will employment is difficult to overcome. Any promises alleged to alter the presumption of at-will employment "must be *very definite* to be enforceable." *Id.* at 737, 403 S.E.2d at 754. In addition, "where an employee seeks to establish a

permanent employment contract or other substantial employment right, either through express promises by the employer or by implication from the employer's personnel manual, policies, or custom and practice, such claim must be established *by clear and convincing evidence.*" *Adkins v. Inco Alloys Intern., Inc.,* 187 W.Va. 219, 225, 417 S.E.2d 910, 916 (1992). Plaintiff's Complaint contains no allegations that he received either an express or implied promise from Defendant that his employment was guaranteed for a definite term. Further, Plaintiff does not contest Defendant's allegation that Plaintiff was an employee "at-will," as stated in Defendant's Motion to Dismiss, although he was advised by the Court that he had the right to file a response to the Motion. Consequently, Plaintiff fails to rebut the presumption that his employment was terminable at-will. *See Suter*, 184 W.Va. at 737, 403 S.E.2d at 754 ("The burden is on the party contending that the relationship was other than terminable at-will to rebut the presumption of employment terminable at-will.").

In general, under West Virginia law an at-will employee may be discharged by an employer "for cause, for no cause, or even for wrong cause."[3] *Mace v. Charleston Area Med. Ctr. Found., Inc.,* 188 W.Va. 57, 422 S.E.2d 624, 630 (1992); *see also Feliciano v. 7-Eleven, Inc.,* 210 W.Va. 740, 559 S.E.2d 713, 718 (2001) ("The practical effect of this doctrine, then, is that 'an at-will employee serves at the will and pleasure of his or her employer and can be discharged at any time, with or without cause.'"), quoting *Kanagy v. Fiesta Salons, Inc.,* 208 W.Va. 526, 541 S.E.2d 616, 619 (2000). The at-will employment doctrine is not, however, absolute. In *Harless v. First National Bank in Fairmont,* 162 W.Va. 116, 246 S.E.2d 270 (1978), the West Virginia Supreme Court of

---

[3] West Virginia law applies in this case, as the Court's jurisdiction is founded solely on diversity, *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), and because West Virginia has the most significant ties to Plaintiff's employment, *New v. Tac & C Energy, Inc.*, 177 W.Va. 648, 355 S.E.2d 629 (W.Va. 1987).

6

Appeals crafted a "limited exception to the common law rule, that in the absence of a written contract containing a fixed term of employment, an employee ... [can] be discharged for good reason, bad reason, or no reason at all." *Collins v. Elkay Mining Co.,* 179 W.Va. 549, 371 S.E.2d 46, 48 (1988). The court held:

> We conceive that the rule giving the employer the absolute right to discharge an at-will employee must be tempered by the further principle that where the employer's motivation for the discharge contravenes some substantial public policy principle, then the employer may be liable to the employee for the damages occasioned by the discharge.

*Harless,* 246 S.E.2d at 275; *see also Wounaris v. W. Va. State Coll.,* 214 W.Va. 241, 588 S.E.2d 406, 412 (2003); *Page v. Columbia Natural Res., Inc.,* 198 W.Va. 378, 480 S.E.2d 817, 824 (1996). The Supreme Court of Appeals has referred to the tort cause of action set forth in *Harless* as an action for "retaliatory" or "wrongful" discharge. *Slack v. Kanawha County Hous. & Re-Dev. Auth.,* 188 W.Va. 144, 423 S.E.2d 547, 555 n. 8 (1992) ("We have used the term 'retaliatory discharge' as a shorthand term for an employee discharge that contravenes some substantial public policy principle...."); *Page,* 480 S.E.2d at 821 (describing plaintiff's cause of action as "a *Harless* wrongful discharge action").

Use of the phrase "substantial public policy" in *Harless* was intended "to exclude claims that are based on insubstantial considerations. The term 'substantial public policy' implies that the policy principle will be clearly recognized simply because it is substantial." *Birthisel v. Tri-Cities Health Servs. Corp.,* 188 W.Va. 371, 424 S.E.2d 606, 612 (1992). The Supreme Court of Appeals has explained that,

> [t]o identify the sources of public policy for purposes of determining whether a retaliatory discharge has occurred, we look to established precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions.... "Inherent in the term 'substantial public policy' is the concept that the policy will provide specific guidance

7

to a reasonable person."

*Kanagy,* 541 S.E.2d at 620, quoting *Birthisel,* 424 S.E.2d at 612. "A determination of the existence of public policy in West Virginia is a question of law, rather than a question of fact for the jury." *Page,* 480 S.E.2d at 823. The Supreme Court of Appeals has expressly recognized that certain rights further substantial public policy; for example, the right to privacy, the right to seek redress of grievances and seek access to the courts, and the right to self defense. *See Wounaris,* 588 S.E.2d at 413; *see also Shell v. Metro. Life Ins. Co.,* 183 W.Va. 407, 396 S.E.2d 174, 180 (1990). In other cases, the Court has noted that a substantial public policy should be easily recognizable so as to "provide specific guidance to a reasonable person." *Birthisel v. Tri-Cities Health Services Corp.,* 188 W.Va. 371, 424 S.E.2d 606, 612 (W.Va. 1992).

The existence of a "substantial public policy" as articulated in *Harless* is to be construed narrowly. *See Washington v. Union Carbide Corp.,* 870 F.2d 957, 962 (4th Cir. 1989). Therefore, in order to obtain relief under a claim for wrongful discharge based upon the contravention of substantial public policy, the plaintiff must show that:

> (1) a clear public policy existed and was manifested in a state or federal constitution, statute, administrative regulation, or in the common law (the *clarity* element);
>
> (2) dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element);
>
> (3) plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element); and
>
> (4) the employer lacked an overriding business justification for the dismissal (the *overriding justification* element).

*Feliciano v. 7-Eleven, Inc.,* 210 W.Va. 740, 559 S.E.2d 713, 723 (W.Va. 2001).

Here, Plaintiff alleges that he was "the number one consultant in [his] district" and that a competing district sales manager "wanted to take [Plaintiff] out so they would have a chance of beating [Plaintiff's district] in sales." (Docket No. 1-1). Overlooking for a moment the obvious implausibility of the alleged scenario—that a global communications company, which is dependent upon customer sales in a highly competitive market, would participate in the termination of a top sales associate based solely upon unfounded and malicious accusations by a competitor—Plaintiff's Complaint, as written, simply does not state an underlying violation of any constitutional, statutory, regulatory, or common law right, or a violation of any substantial public policy that would sustain a claim of wrongful discharge. As such, the undersigned **FINDS** that the Complaint fails to state a claim which is plausible on its face and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## V. <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the proposed findings and **RECOMMENDS** that**:**

1. Defendant's Motion to Dismiss (Docket No. 4) be **GRANTED;** and

2. This civil action be **DISMISSED, with prejudice,** and removed from the docket of this Court.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with

the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff, the Defendant, and any counsel of record.

**FILED**: August 25, 2011.

Cheryl A. Eifert
United States Magistrate Judge